ISAAC & COMPANY, Appellant, v. J. R. LINDSEY & COMPANY, Appellee.

**BILLS AND NOTES:** Nonnegotiable Sight Draft—Defenses. One who, in one and the same transaction, and as an accommodation, assumes the position of purchaser of goods from the real owner, and the seller to a third party, and accepts in payment the nonnegotiable sight draft of such party, is subject, in an action on the draft, to the defense of total failure of consideration.

**PRINCIPAL AND AGENT:** Authority of Agent—Borrowing Money. Principle recognized that the power in an agent to borrow money on behalf of his principal will be found only on an exceptionally clear showing of such power.

**APPEAL AND ERROR:** Harmless Error—Rejection of Evidence of Established Fact. Harmless error results from the rejection of depositions tending to prove an established and conceded fact.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

· APRIL 6, 1920.

ACTION at law upon a sight draft drawn on the defendant and delivered to plaintiff by the alleged agent of the defendant, the same being for money paid by the plaintiff to a third party for the alleged use of the defendant, and at the

request of the alleged agent. The defense was that the agent had no authority to draw the draft or to deliver the same to the plaintiff; that the money paid by the plaintiff to said third party was so paid pursuant to false and fraudulent representations made by such third party, and that the defendant received no benefit or consideration therefrom whatever. There was a trial to the court without a jury, and judgment for the defendant. Plaintiff appeals.—*Affirmed.*

*George H. Mayne* and *Haliner, Craft & Edgerton,* for appellant.

*Tinley, Mitchell, Pryor & Ross,* for appellee.

EVANS, J.—I. The respective briefs of the parties are in dispute as to whether this is an action on the sight draft or an action for money paid to the use of the defendant. The petition will bear construction either

1. BILLS AND NOTES: non-negotiable sight draft: defenses.

way. Ordinarily, therefore, we should solve doubts of construction in support of the judgment below. This is doubly true as against the pleader. In our view of the case, however, we do not think such question controlling, as we shall presently see. The plaintiff is a partnership, engaged in the butcher business, at Aurora, Nebraska. The defendant also is a partnership, engaged in the business of buying and selling hides, wool, and furs. Pace, the agent, was in the employ of defendant, and was engaged primarily in buying hides and wool. This was the particular field of his experience. He was not experienced in the buying of furs, but we shall assume that the scope of his agency in this respect was co-extensive with the lines of the business of his principal.

Stating the facts briefly, as testified to by the plaintiff Isaac, Pace appeared at his shop on December 26, 1917, as

the traveling representative of the defendant, and purchas-
ed from the plaintiff its stock of hides. During the same
day, and while Pace was still in the town, a stranger ap-
peared at plaintiff's shop, with a quantity of furs for sale.
He gave his name as Hughes. Plaintiff declined to purchase
the furs, but advised Hughes that there was a traveling
hide-man in town. Shortly thereafter, he pointed out Pace
to Hughes, as Pace was coming into the shop. Pace and
Hughes entered into negotiations, which resulted in the
purchase by Pace from Hughes of furs, to the amount of
$355. The skins consisted of wolf, coon, badger, possum,
skunk, etc. Hughes represented that he had trapped the
animals near his home in the same county, about 13 miles
distant from Aurora. Pace was furnished by his principal
with a form of sight draft, which he was authorized to use
in payment for goods purchased. It was not negotiable in
form. It had attached thereto an invoice coupon, wherein
an invoice of goods purchased was to be set forth. This in-
voice was to be duly signed, and payment therefor duly re-
ceipted by the seller. On the face of the draft appeared the
following printed warning:

"Draft not good unless coupon invoice attached is prop-
erly signed, and in payment for goods in our line."

Hughes insisting upon cash payment, the plaintiff ad-
vanced the amount necessary to pay for the furs.

This is the foundation of plaintiff's alleged cause of ac-
tion, whether it be based upon the draft issued to it by
Pace, or upon the fact that money was thus paid at the re-
quest of Pace. It should, perhaps, be noted at this point
that Pace testified that he had not even requested such pay-
ment by plaintiff, but that the plaintiff volunteered such
advancement, and its offer was acquiesced in by Pace. If
this latter fact should be deemed material (and we think it
is not), we should have to accept the statement of Pace, in
support of the finding of facts by the trial court.

Upon this state of facts, the method of reimbursement of the plaintiff might have taken any one of four or more forms.

(1) The plaintiff might have stood in the position of a lender of the money.

(2) It could have stood in the position of having paid money at the request of Pace, to the use and benefit of the defendant.

(3) Pace could have issued to Hughes his usual form of sight draft, with invoice attached, appropriately signed and receipted by Hughes, which draft could have been transferred by Hughes to plaintiff.

(4) It could, with the consent of Hughes and Pace, have made itself the purchaser of the furs from Hughes, and the seller of the same to the defendant.

If plaintiff had stood upon the first hypothesis above, and had proved the authority of Pace to borrow money upon the credit of his principal, then it would be entitled to recovery, regardless of any defense which such principal had as against Hughes. But the burden of proof of authority in Pace would have been upon the plaintiff, and this record indicates that such proof could not have been made.

If it had stood upon the second hypothesis, and had proved that the defendant did accept the benefit to the procurement of which plaintiff's money had been paid, we may assume that this would have been a sufficient ground of recovery. But the burden of proof of acceptance of benefits, as in the nature of ratification of an act of agency, would, in such case, be upon the plaintiff. Such proof would necessarily negative the very defense upon which defendant successfully stood in the trial court.

If it had stood upon the third hypothesis, it would have found itself a holder of nonnegotiable paper. Its rights thereunder would be subject to any defense good against

Hughes. In such event, therefore, it would have had to meet the same defense as it has met.

The fourth hypothesis was the one actually adopted. The plaintiff treated itself as the seller of the furs, and accepted from Pace a sight draft upon the defendant, and signed and receipted the invoice attached thereto, as the purported seller of the goods described in the invoice. It thereby made itself subject to the defense set up, in so far, at least, as such defense is based upon a total want or failure of consideration, in that the furs were, in fact, totally worthless.

The finding of the trial court in this regard was purely a finding of fact, and has abundant support in the evidence.

It is manifestly true that plaintiff was not guilty of any intentional fraud. It put itself, however, in a false position, which, as between it and the defendant, it was not justified in doing, when, for the purpose of collecting the draft from the defendant, it represented itself as seller of the furs.

It is manifest that, of the hypotheses above stated, only the first would open a door of escape to plaintiff from the defense, good against Hughes, that was set up by defendant.

2. Principal and Agent: authority of agent: borrowing money. But the scope of the authority of Pace to pledge the credit of his principal was clearly restricted in the form of the sight draft used by him. No fact appears in the record from which the power to borrow money on the credit of his principal could be implied. Indeed, it is well settled, as a cardinal rule, that the power of an agent to borrow money upon the credit of his principal will not be readily implied. Authority to borrow money or to execute negotiable paper in the name of his principal is regarded in law as one of the most dangerous powers which may be conferred upon an agent. The granting of such authority implies a special and high degree of confidence, and, in the ab-

sence of express proof, will not be implied, unless it be a necessary and inevitable inference from the very nature of the agency created. 1 Mechem on Agency (2d Ed.), Section 1001.

If this were an action against Pace himself, a very different question would ·be presented. But the defendant rejected the furs, as the purported benefits, and returned the same immediately to plaintiff, with notice of their rejection. Plaintiff held its cause of action, therefore, subject to the defense set up by defendant. The finding of the trial court has the effect of a verdict, and is well supported by the evidence. We cannot, therefore, interfere with it.

II. Error is assigned on adverse rulings of the court, rejecting certain testimony offered by deposition on behalf of plaintiff, to the effect that the usual custom in the hide and fur trade was for traveling agents to make payment by the issuance of sight drafts upon their principals, in precisely the form of draft used in this case. We see no occasion for the proof. If it had been admitted, it would add nothing to the record which does not already appear there without dispute. Whether the form of evidence was objectionable, therefore, we need not inquire. The judgment below must be—*Affirmed.*

3. APPEAL AND ERROR: harmless error: rejection of evidence of established fact.

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.